1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TREVOR COOK, | Case No.  20-cv-02704-JCS |
| Plaintiff, | |
| v. | **ORDER REGARDING MOTION TO DISMISS** |
| CITY OF FREMONT, et al., | Re: Dkt. No. 21 |
| Defendants. | |

## I.    INTRODUCTION

Plaintiff Trevor Cook, pro se, brought this action against Defendants the City of Fremont, Fremont Police Officer E. Tang, and Fremont Police Officer K. Romley (collectively, "Defendants"), as well as ten Fremont police officers identified only as Does 1–10 (the "Doe Defendants"). Cook asserts claims based on a warrantless seizure of Cook and a warrantless search of Cook's home. Defendants move to dismiss most of Cook's claims. The Court finds that this motion is appropriate for decision without oral argument. Accordingly the hearing scheduled for November 6, 2020 at 9:30 a.m. is vacated. However, there is a case management conference scheduled for that date. The case management conference is moved to a different time of day: November 6, 2020 at 2:00 p.m. For the reasons discussed below, Defendants' motion is GRANTED. If Cook wishes to file an amended complaint, he may do so no later than December 6, 2020.[1]

---

[1] The parties have consented to the jurisdiction of the undersigned magistrate judge for all purposes pursuant to 28 U.S.C. § 636(c).

United States District Court
Northern District of California

## II.     BACKGROUND

### A.     Allegations of the Complaint

Because a plaintiff's factual allegations are generally taken as true in deciding a motion to dismiss under Rule 12(b)(6), this order summarizes Cook's allegations as if true. Nothing in this order should be construed as resolving any issues of fact that might be disputed at a later stage of the case.

On April 19, 2018, Cook was watching television with his wife in the garage of their home in Fremont, California. Compl. (dkt. 1) ¶ 13. His teenage son was also inside the home. *Id.* at 18. While Cook and his wife were watching television, a couple whom Cook did not initially recognize walked past the home and called out Cook's name. *Id.* ¶ 14. Cook realized that one of the individuals was a childhood acquaintance named "Mike." *Id.* Cook briefly spoke with Mike before returning to watch television with his wife. *Id.* ¶ 14–15. Shortly after, several police officers approached his driveway with police dogs and guns pointed at both Cook and his wife. *Id.* at 16. One officer ordered Cook to walk to the end of the driveway. *Id.* When Cook asked "what was going on," one or more officers responded that they would shoot Cook and his wife if he did not comply. *Id.*

The officers, with guns still trained on Cook and his wife, then walked up the driveway towards the garage. *Id.* ¶ 17. Cook held up his hands and walked towards the officers "with the hope that he could prevent them from getting near his wife in the garage and his teenage son who was inside the home." *Id.* ¶ 19. Cook made no threatening gestures and kept his hands raised. *Id.* Defendant Tang then "grabbed Cook's arm, did a leg sweep, and slammed him to the ground, causing Cook's knees, shoulder, and face to hit the ground with great force." *Id.* Tang handcuffed Cook behind his back while Cook was on the ground. *Id.* Cook's wife then began filming the interaction. *Id.* ¶ 20.

Tang lifted Cook to his feet and walked Cook away from his wife's camera towards the street where multiple police vehicles were parked. *Id.* ¶ 21. Cook's wife attempted to follow Tang and Cook to continue filming when another officer ordered her to return to the garage. *Id.* Cook's wife complied. *Id.* While Cook was handcuffed behind his back, Tang began to beat

2

Cook. *Id.* ¶ 22. Tang "pounded on Cook's body with open palms all over his body, including striking Cook directly in his testicles." *Id.* Tang then placed Cook in the back seat of a police vehicle for "almost two hours." *Id.* ¶ 23.

Tang and Romley explained to Cook's wife that they were searching for Mike, who had stolen a car. *Id.* ¶ 26. Tang explained that they did not believe that Mike was violent, but that "he liked to steal things." *Id.* ¶ 26. Tang told Cook's wife that they were considering whether or not to arrest Cook. *Id.* ¶ 27.

The Doe Defendants then searched Cook's back yard and home without a warrant and without consent. *Id.* ¶ 28. Tang and Romley did not intervene or attempt to intervene in the search. *Id.* ¶ 29. Tang then transported Cook to the Fremont Police Station where he was detained for an additional two hours. *Id.* ¶ 30.

For the duration of Cook's interactions with Tang, Romley and the Doe Defendants "were close by, armed, and providing back up." *Id.* ¶ 24. One or more of the Doe Defendants also had their weapons drawn and pointed at Cook's wife. *Id.* Cook contends that Tang, Romley, and the Doe Defendants were "integral participants in the unlawful search" and the excessive use of force. *Id.* ¶¶ 25, 29. He further contends that they did not intervene or attempt to intervene in the search or the excessive use of force. *Id.* ¶¶ 25, 29.

After the incident, Cook filed a claim pursuant to California Government Code section 910. *Id.* ¶ 31. He "mailed his notice of claim to the City of Fremont on October 11, 2018, and the City mailed its rejection of the claim on October 18, 2018." *Id.*

Cook's complaint includes the following claims: (1) unreasonable seizure of Cook's person in violation of the Fourth Amendment and 42 U.S.C. § 1983, against only Tang, Romley, and the Doe Defendants, *id.* ¶¶ 33–34; (2) unreasonable search in violation of the Fourth Amendment and 42 U.S.C. § 1983, against only Tang, Romley, and the Doe Defendants, *id.* ¶¶ 35–37; (3) unreasonable search and seizure in violation of the Fourth Amendment and 42 U.S.C. § 1983, against only the City of Fremont, *id.* ¶¶ 38–39; (4) interference with Cook's civil rights by threats, intimidation, or coercion in violation of California Civil Code section 52.1, *id.* ¶¶ 40–45; (5) negligence, *id.* ¶¶ 46–48; and (6) intentional infliction of emotional distress, *id.*

¶¶ 49–53.

      **B.    Parties' Arguments**

            **1.    Defendants' Motion**

      Defendants contend that the excessive force claim should be dismissed as to Romley because Cook has not alleged sufficient facts showing that Romley personally participated in the alleged conduct. Mot. (dkt. 21) at 5–7. Alternatively, Defendants argue that Romley was not an "integral participant in Tang's alleged conduct" and did not have any opportunity to intervene in the conduct. *Id.* at 7. Defendants argue that the unreasonable search claim should be dismissed as to Tang and Romley because Cook has not alleged sufficient facts to show that Tang or Romley were ether "integral participants in the alleged unlawful search" or had an opportunity to intervene. *Id.* at 7. Defendants further argue that the unreasonable search and seizure claim against the City of Fremont should be dismissed for failure to meet the requirements of *Monell v. Department of Social Services*, 436 U.S. 658 (1978). Mot. at 7–13.

      Defendants contend that all state law claims should be dismissed without leave to amend because the claims are "time-barred by the Government Claims Act six-month complaint filing deadline." *Id.* at 4–5. Relying on both Cook's allegations and a rejection letter that Defendants submit for judicial notice, Defendants assert that Cook mailed his notice of claim to the City of Fremont on October 11, 2018 and the City of Fremont mailed its rejection notice on October 18, 2018. *Id.* at 5. According to Defendants, Cook needed to file this action before April 18, 2019 but did not file his claim until April 17, 2020, "nearly one full year after the six-month filing deadline expired." *Id.*

      In addition, Defendants argue that some of the state law claims should be dismissed for failure to allege sufficient facts to sustain the claims. Mot. at 13–16. Defendants argue that the claim for violation of California Civil Code section 52.1 should be dismissed as to Romley because Cook has not alleged sufficient facts showing any violence or threat of violence by Romley. *Id.* at 13–14. Defendants argue that Cook's common law tort claims should be dismissed as to Romley because Cook has not alleged sufficient facts showing a breach of duty or actual causation to support his negligence claim and has not alleged sufficient facts showing

4

intentional or reckless conduct to support his claim for intentional infliction of emotional distress. *Id.* at 14–16.  Defendants also contend that Cook has not identified a statutory basis for his common law tort claims against the City of Fremont as required by California Government Code section 815.  *Id.*

### 2.    Opposition

Cook addresses parts of Defendants' motion and argues that his complaint states a claim for each count.  *See* Opp'n (dkt. 27).  For the excessive force claim, Cook argues that his factual allegations are sufficient to show that Romley was present during Tang's use of excessive force and "did nothing to intervene on [his] behalf."  *Id.* at 3.  For the unreasonable search claim, Cook argues that Romley actively participated in the search of Cook's home and that Tang "had multiple realistic opportunities to do his duty to intervene."  *Id.*  He further argues that Tang and Romley were aware that the home was searched without Cook's consent.  *Id.*  For the *Monell* claim, Cook argues that the City of Fremont should "bear liability for acts committed by its employees."  *Id.* at 4.

Cook argues that his state law claims are not time-barred because he "could not file anything until [his] criminal case was completed."  *Id.* at 3.  Cook argues that his criminal attorney advised him on September 5, 2019 that no charges would be filed in his case and that he was "free to pursue this matter further."  *Id.*  For the California Civil Code section 52.1 claim, Cook argues that Romley's inaction constituted "disregard to the violence" committed by Tang.  *Id.* at 4.  For the negligence claim, Cook reiterates the allegations from his complaint and argues that Defendants "breached their duty of using ordinary care" and that the City of Fremont is responsible for "supervising their employees."  *Id.*  For the intentional infliction of emotional distress claim, Cook argues Romley's "intentional lack of duty to intercede . . . attributed to [his] emotional state" and that the City of Fremont is liable for the actions of its employees.  *Id.* at 5.

### 3.    Defendants' Reply

In their reply, Defendants reiterate most of the arguments previously made in their motion. *See generally* Reply (dkt. 28).  Defendants reject Cook's "reliance on extraneous allegations in his opposition that [were] not contained in his complaint."  *Id.* at 1.  As to the state law claims,

1   Defendants concede that the statute of limitations would be tolled if criminal charges were

2   pending in superior court. *Id.* at 2–3 (citing Cal. Gov't Code § 945.3). Defendants argue,

3   however, that dismissal is warranted here because Cook failed to allege in his complaint that "any

4   criminal charges ever were pending against him" for the tolling provision to apply. *Id.* at 3.

5   **III.    ANALYSIS**

6       **A.    Legal Standard Under Rule 12(b)(6)**

7       A complaint may be dismissed for failure to state a claim on which relief can be granted

8   under Rule 12(b)(6) of the Federal Rules of Civil Procedure. "The purpose of a motion to dismiss

9   under Rule 12(b)(6) is to test the legal sufficiency of the complaint." *N. Star Int'l v. Ariz. Corp.*

10  *Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). Generally, a claimant's burden at the pleading stage

11  is relatively light. Rule 8(a) of the Federal Rules of Civil Procedure states that a "pleading which

12  sets forth a claim for relief . . . shall contain . . . a short and plain statement of the claim showing

13  that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).

14      In ruling on a motion to dismiss under Rule 12(b)(6), the court takes "all allegations of

15  material fact as true and construe[s] them in the light most favorable to the non-moving party."

16  *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Dismissal may be based on a

17  lack of a cognizable legal theory or on the absence of facts that would support a valid theory.

18  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A pleading must "contain

19  either direct or inferential allegations respecting all the material elements necessary to sustain

20  recovery under some viable legal theory." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007)

21  (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)). "A pleading

22  that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action

23  will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).

24  "[C]ourts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"

25  *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Nor does a

26  complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"

27  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Rather, the claim must be "'plausible

28  on its face,'" meaning that the claimant must plead sufficient factual allegations to "allow the

6

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 570).

Pro se pleadings are generally liberally construed and held to a less stringent standard. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Even post-*Iqbal*, courts must still liberally construe pro se filings. *Hebbe v. Pliler*, 627 F.3d 338 (9th Cir. 2010). As the Ninth Circuit explained in *Hebbe*, "while the standard is higher, our obligation remains, where the petitioner is pro se, particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt." *Id.* at 342. Nevertheless, the Court may not "supply essential elements of the claim that were not initially pled." *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

If the Court dismisses a complaint under Rule 12(b)(6), it should "grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks and citations omitted). In general, courts "should freely give leave when justice so requires." *Id.* Further, when it dismisses the complaint of a pro se litigant with leave to amend, "'the district court must provide the litigant with notice of the deficiencies in his complaint in order to ensure that the litigant uses the opportunity to amend effectively.'" *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) (quoting *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992)). "'Without the benefit of a statement of deficiencies, the pro se litigant will likely repeat previous errors.'" *Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 624 (9th Cir. 1988) (quoting *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987)).

**B.    Request for Judicial Notice**

Defendants request the Court take judicial notice of the City of Fremont's Notice of Rejection of Cook's claim. *See* Request for Judicial Notice (dkt. 21-1) Ex. A. Cook has not objected to the request. *See generally* Opp'n.

Generally, the Court may not consider material outside the pleadings in ruling on a motion to dismiss. *Branch v. Tunnell*, 14 F.3d 449, 453–54 (9th Cir. 1994), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002). However, under the

United States District Court
Northern District of California

7

United States District Court
Northern District of California

"incorporation by reference" doctrine, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss." *Id.* at 454. Paragraph 31 of the complaint references the letter notifying Cook of the City of Fremont's rejection of his claim. Compl. ¶ 31. As neither party disputes the authenticity of the document submitted, the Court GRANTS this request for judicial notice of the document under the "incorporation by reference" doctrine.

### C.    Claims Under § 1983

#### 1.    Individual Liability

##### a.    Excessive Force Claim

Defendants move to dismiss the § 1983 excessive force claim as to Romley arguing that there is an insufficient showing of personal participation by Romley in Tang's use of excessive force, which Defendants do not challenge in their motion. Mot. at 6–7. Defendants argue to the extent Cook is relying on a theory of "integral participation" that there are insufficient facts to support liability on those grounds. *Id.* at 6. In his opposition, Cook argues that his excessive force claim as to Romley is rooted in Romley's failure to "intervene on [Cook's] behalf." Opp'n at 3.

"An officer's liability under section 1983 is predicated on his 'integral participation' in the alleged violation." *Blankenhorn v. City of Orange,* 485 F.3d 463, 481 n.12 (9th Cir. 2007) (citing *Chuman v. Wright*, 76 F.3d 292, 294–95 (9th Cir. 1996)). "Integral participation does not require that each officer's actions themselves rise to the level of a constitutional violation . . . . [b]ut it does require some fundamental involvement in the conduct that allegedly caused the violation." *Id.* (citations and quotation marks omitted). Thus, "[o]fficers are fundamentally involved in the alleged violation when they provide affirmative physical support at the scene of the alleged violation and when they are aware of the plan to commit the alleged violation or have reason to know of such a plan, but do not object," *Monteilh v. County of Los Angeles,* 820 F. Supp. 2d 1081, 1089–90 (C.D. Cal. 2011). "Additionally, officers may be integral participants even if they have no knowledge of a plan to commit the alleged violation if their physical participation in the alleged violation was part of a closely related series of physical acts leading to the violation." *Id.*

8

(citing *Blankenhorn,* 485 F.3d at 481 n.12).  Here, Cook has failed to sufficiently allege in his complaint that Romley had prior knowledge of Tang's actions or that Romley was aware of the excessive force while it was occurring.  Cook's allegations that Romley was "close by, armed, and providing back up," Compl. ¶ 24, are insufficient to support a theory of integral participation.

Cook, however, appears to largely abandon a theory of integral participation and instead argues that Romley failed to intervene in Tang's use of excessive force.  *See* Compl. ¶ 25. "Pursuant to a long line of civil cases, police officers have a duty to intercede when their fellow officers violate the constitutional right of a suspect or other citizen." *United States v. Koon,* 34 F.3d 1416, 1447 n.25 (9th Cir. 1994), *rev'd on other grounds,* 518 U.S. 81 (1996).  "[T]he constitutional right violated by the passive defendant is analytically the same as the right violated by the person who strikes the blow." *Id.*  An officer who fails to intervene when his colleagues subject a victim to a deprivation of his Fourth Amendment rights would also be responsible for violating the Fourth Amendment. *Id.*  The duty to intervene, however, does not attach unless the officer had a "realistic opportunity" to intervene. *Cunningham v. Gates,* 229 F.3d 1271, 1290 (9th Cir. 2000) (finding no "realistic opportunity" where the non-shooting officers were not present at the time of the shootings).  Here, Cook has failed to sufficiently allege in his complaint that Romley witnessed or otherwise was aware of Tang's use of excessive force or was near enough to have a realistic opportunity to intervene.  Accordingly, the Court DISMISSES this claim under both theories with leave to amend.

b.       Unreasonable Search Claim

Defendants move to dismiss the § 1983 unlawful search claim as to Tang and Romley arguing that there are insufficient facts showing that Tang and Romley "knew or should have known that an allegedly unlawful search was occurring, that unidentified officers planned or intended to conduct an unlawful search or that they had the opportunity to prevent the search and failed to prevent it."  Mot. at 7.[2]

---

[2] In his opposition, Cook alleges for the first time that Romley personally participated in the search of Cook's home and that Cook "announced loud and clear that the police [were] not allowed to search [his] home." Opp'n at 3.  The Court may not consider facts asserted for the first

9

United States District Court
Northern District of California

1    As discussed above, "police officers have a duty to intercede when their fellow officers

2    violate the constitutional right of a suspect or other citizen." *Koon*, 34 F.3d at 1447 n.25.

3    Bystander police officers will not be liable for failing to intervene if they are not aware that the

4    search is unlawful. *Ramirez v. Butte-Silver Bow County*, 298 F.3d 1022, 1029–30 (finding no

5    failure to intercede where the officer had no reason to know the search warrant was defective until

6    after the search).  Cook alleges that the search was conducted without a warrant and without

7    Cook's consent.  Compl. ¶ 28.  Cook, however, does not allege in his complaint that Tang or

8    Romley were aware that the search was being conducted without a warrant and without Cook's

9    consent, or more generally that they were aware that the search was unlawful. *See Schneckloth v.*

10   *Bustamonte,* 412 U.S. 218, 219 (1973) (recognizing consent is only one exception to the warrant

11   requirement for reasonable searches under the Fourth Amendment).  If Tang and Romley were not

12   aware that the search was unlawful, they would not be liable for failing to intervene. *See Ramirez,*

13   298 F.3d at 1029–30.  Accordingly, the Court DISMISSES this claim with leave to amend.

14                    **2.     Entity Liability**

15   Under *Monell*, a municipality cannot be held liable under § 1983 for constitutional injuries

16   inflicted by its employees on a theory of respondeat superior. *Monell*, 436 U.S. at 691.  "Instead,

17   it is when execution of a government's policy or custom, whether made by its lawmakers or by

18   those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the

19   government as an entity is responsible under § 1983." *Id.* at 694.  A plaintiff seeking to establish

20   municipal liability under § 1983 may do so in one of three ways: (1) the plaintiff may demonstrate

21   that a municipal employee committed the alleged constitutional violation "pursuant to a formal

22   government policy or longstanding practice or custom which constitutes the standard operating

23   procedures of the local governmental entity"; (2) the plaintiff may demonstrate that the individual

24   who committed the constitutional violation was an official with "final policy-making authority and

25   that the challenged action itself thus constituted an act of official government policy"; or (3) the

26

27   _____

28   time in Cook's opposition brief. *See Reno v. Nielson*, 424 F. Supp. 3d 1045, 1053 (D. Haw. 2019)
     ("An opposition to a motion to dismiss is an improper vehicle to assert additional facts not initially
     alleged, which Plaintiff may properly assert through an amended complaint.") (citation omitted).

1   plaintiff may demonstrate that "an official with final policy-making authority ratified a

2   subordinate's unconstitutional decision or action and the basis for it."  *Gillette v. Delmore*, 979

3   F.2d 1342, 1346 (9th Cir. 1992).

a.      Custom or Practice Allegations

4

5          Under § 1983, a municipality may be held liable based on an unconstitutional policy even

6   where it is not an express municipal policy that has been formally adopted.  In particular, the

7   Supreme Court has recognized that a municipality may be held liable on the basis of an

8   unconstitutional policy if the plaintiff can "prove the existence of a widespread practice that,

9   although not authorized by written law or express municipal policy, is 'so permanent and well

10  settled as to constitute a "custom or usage" with the force of law.'"  *City of St. Louis v. Prapotnik,*

11  485 U.S. 112, 127 (1988) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167–68 (1970)).  In

12  order to withstand a motion to dismiss for failure to state a claim, a *Monell* claim must consist of

13  more than mere "formulaic recitations of the existence of unlawful policies, conducts or habits."

14  *Warner v. County of San Diego,* No. 10-1057, 2011 WL 662993, at *4 (S.D. Cal. Feb. 14, 2011).

15         Cook has alleged that the City of Fremont "[f]ail[ed] to have or enforce appropriate

16  policies, procedures, and training to prevent, stop, or correct unconstitutional conduct, customs,

17  and procedures, when the need to do so was obvious."  Compl. ¶ 38(c).  Cook does not, however,

18  allege any specific facts that render his allegations of an unconstitutional custom or practice

19  plausible.  He alleges no other similar incidents that would tend to support an inference that these

20  policies were "well settled."  *See Lozano v. Cty. of Santa Clara,* No. 19-CV-02634 (EMC), 2019

21  WL 6841215, at *18 (N.D. Cal. Dec. 16, 2019) (dismissing a *Monell* claim based on custom and

22  practice on the pleadings because the plaintiff had not alleged that any other person was subject to

23  similar treatment).  Nor has he alleged any other specific facts that give rise to a plausible

24  inference as to the existence of any of the customs and practices alleged in the complaint.

25         Accordingly, Cook's § 1983 claim against the City of Fremont is dismissed with leave to

26  amend to the extent it is based on an alleged unconstitutional custom or practice.

b.      Ratification Allegations

27

28         The Supreme Court has held that "municipal liability under § 1983 attaches where . . . a

deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986).  Thus, "[i]f the authorized policymakers approve a subordinate's decision and the basis for it, their ratification [is] chargeable to the municipality." *Prapotnik*, 485 U.S. at 127.

Cook has alleged on information and belief that the unconstitutional actions of Tang, Romley and the Doe Defendants were pursuant to the custom, polices, and/or practices listed in Paragraph 38, "which were allowed, directed, encouraged, and/or ratified by policy making officials" for the City of Fremont.  Compl. ¶ 38.  Yet he alleges no specific facts that would give rise to a plausible inference that any official with policy-making authority made a "deliberate" choice or approved the basis for the unconstitutional conduct alleged by Cook as would be required to hold the City of Fremont liable on a theory of ratification.

Accordingly, Cook's § 1983 claim against the City of Fremont is dismissed with leave to amend to the extent it is based on a theory of ratification.

### c.   Failure to Train Allegations

"In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Connick v. Thompson*, 563 U.S. 51, 61 (2011).  However, "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Id.*  Thus, a municipality may be held liable based on a failure to train only where it "amount[s] to 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.'" *Id.* (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)).  The Supreme Court has explained that this high threshold for establishing municipal liability is consistent with its holding in *Monell* because "permitting cases against cities for their 'failure to train' employees to go forward under § 1983 on a lesser standard for fault would result in de facto respondeat superior liability on municipalities" and would "engage the federal courts in an endless exercise of second-guessing municipal employee-training programs." *City of Canton*, 489 U.S. at 392.

In *City of Canton*, the Court addressed the circumstances under which a municipality can be held liable under § 1983 based on inadequate training:

> In resolving the issue of a city's liability, the focus must be on adequacy of the training program in relation to the tasks the particular officers must perform.   That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program.  *See Springfield v. Kibbe*, 480 U.S. [257, 268 (1987)] (O'CONNOR, J., dissenting); *Oklahoma City v. Tuttle*, 471 U.S. [808, 821 (1985)] (opinion of REHNQUIST, J.). If may be, for example, that an otherwise sound program has occasionally been negligently administered.  Neither will it suffice to prove that an injury or accident could have been avoided if an officer had had better or more training, sufficient to equipped him to avoid the particular injury-causing conduct.  Such a claim could be made about almost any encounter resulting in injury, yet not condemn the adequacy of the program to enable officers to respond properly to the usual and recurring situations with which they must deal.   And plainly, adequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the city liable.

*Id.* at 390–91.

Cook alleges that the City of Fremont is liable for the conduct of Tang, Romley, and the Doe Defendants based on a "[failure] to institute, maintain, or administer sufficient training on subjects such as seizure/use of force against citizens and warrantless searches of persons and homes." Compl. ¶ 38.  Cook has alleged no specific facts regarding the nature of the deficient training or how the allegedly unconstitutional conduct of the other defendants resulted from the training.  The allegations in Cook's complaint do not give rise to a plausible inference that the City of Fremont can be held liable on the basis of any inadequate training program.

Accordingly, Cook's § 1983 claim against the City of Fremont is dismissed with leave to amend to the extent it is based on inadequate training.

**D.    State Law Claims**

**1.    Statute of Limitations**

Defendants assert, and Cook does not dispute, that a six-month limitations period applies to the state common law claims.  In his opposition, however, Cook asserts for the first time that he was unable to file within the six-month statute of limitations because of a pending criminal case arising from the incidents that form the basis of this complaint.  Opp'n at 3.

13

California law generally requires that before a plaintiff can sue a public entity or public employee for money damages, the plaintiff must first present a claim to the public entity. *See, e.g.*, *Willis v. Reddin*, 418 F.2d 702, 704 (9th Cir. 1969); *Briggs v. Lawrence*, 230 Cal. App. 3d 605, 613 (1991); Cal. Gov't Code §§ 950.2, 950.6. Compliance with this requirement must be alleged in the plaintiff's complaint. *State v. Superior Court (Bodde)*, 32 Cal. 4th 1234, 1243 (2004); *Mangold v. Cal. Pub. Utils. Comm'n*, 67 F.3d 1470, 1477 (9th Cir. 1995). The entity must grant or deny a claim within forty-five days or it is deemed rejected. *See* Cal. Gov't Code § 912.4. If the entity provides written notice of a decision, the statute of limitations for the plaintiff to bring a civil action expires "six months after the date of such notice is personally delivered or deposited in the mail." Cal. Gov't Code § 945.6(a)(1). Here, Cook asserts state torts for negligence, intentional infliction of emotional distress, and a violation of California Civil Code section 52.1. Each of these claims are subject to the six-month statute of limitations running from the mailing of the written denial. *See Okoro v. City of Oakland*, 142 Cal. App. 4th 306, 311 (2006) (applying the six-month limitations period provided by section 945.6(a)(1) to suits against public entities and public employees acting in the scope of their employment). Cook alleges that the rejection notice was mailed on October 18, 2018. Compl. ¶ 31. Cook did not file his claim until April 17, 2020, outside the six-month limitation period.

Defendants concede that, pursuant to California Government Code section 945.3, the statute of limitations on any civil action against a police officer or public entity employing the police officer relating to an offense for which the plaintiff faces criminal charges is tolled during the period that charges are pending before a superior court. Reply at 2–3. "Under this section, 'criminal charges are "pending" until the date of judgment.'" *Torres v. City of Santa Ana*, 108 F.3d 224, 226 (9th Cir. 1997) (quoting *McAlpine v. Superior Court,* 209 Cal. App. 3d 1, 3 (1989)). Defendants correctly note, however, that Cook failed to include any allegations related to criminal charges in his complaint. The Court may not consider facts asserted for the first time in Cook's opposition brief. *See Reno*, 424 F. Supp. 3d at 1053 ("An opposition to a motion to dismiss is an improper vehicle to assert additional facts not initially alleged, which Plaintiff may properly assert through an amended complaint." (citation omitted)).

United States District Court
Northern District of California

1

2

3

4

5

6

7

Even if Cook had included in his complaint what he now asserts in his opposition, it is not clear that criminal charges were ever pending against him, or even if they were, that the statute of limitations would be tolled sufficiently to save his claims. Cook asserts that his criminal defense attorney notified him on September 5, 2019 that "no charges [would] be filed." Opp'n at 3. If the statute of limitations began to run on that date, Cook would have needed to file his state law claims before March 5. 2020. *See* Cal. Gov't Code § 945.6(a)(1). Cook did not file his complaint until more than a month later, on April 17, 2020.

8

9

10

11

12

The Court therefore GRANTS Defendants' motion to dismiss Cook's state law claims as time-barred. The Court addresses below Defendants' other arguments for dismissing Cook's claims under California law to determine whether any claims should be dismissed with prejudice, and to avoid duplicative motion practice if Cook amends his complaint to resolve the issue of timeliness.

13

### 2.     California Civil Code Section 52.1

14

15

16

17

18

19

20

Defendants move to dismiss Cook's claim under California Civil Code section 52.1 as to Romley, arguing that Cook has not alleged violence or a threat of violence by Romley specifically. Mot. at 14. Defendants argue that the complaint only alleges that Romley was "present at the scene, armed, and providing backup." *Id.* In his opposition, Cook argues that Romley violated California Civil Code section 52.1 by failing to "step in and stop what Sgt. Tang was doing." Opp'n at 4. Cook further argues that Romley's "inaction in this matter shows his disregard to the violence that Sgt. Tang was inflicting upon [Cook]." *Id.*

21

22

23

24

25

26

27

28

Section 52.1 of the California Civil Code, also known as the Bane Act, creates a right of action against any person who "interferes by threat, intimidation, or coercion . . . with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or . . . of this state." Cal. Civ. Code § 52.1(a) (defining the conduct prohibited); *see also id.* § 52.1(b) (creating private right of action). To prevail on a Bane Act claim, a plaintiff must demonstrate: (1) an act of interference with a legal right by (2) intimidation, threats, or coercion. *Jones v. Kmart Corp.*, 17 Cal. 4th 329, 334 (1998). A Bane Act claim "does require an attempted or completed act of interference with a legal right, accompanied by a form of coercion."

15

*Id.* at 334.  A Bane Act claim "requires a specific intent to violate the arrestee's right to freedom from unreasonable seizure."  *Reese v. County of Sacramento*, 888 F.3d 1010, 1043 (9th Cir. 2018).

Cook has not alleged sufficient involvement or knowledge by Romley with respect to Tang's use of excessive force showing that Romley possessed the specific intent to violate Cook's rights.  Accordingly, Cook's failure to allege such facts provides a separate basis, in addition to the statute of limitations, to dismiss the Bane Act claim against Romley.  Because this defect also might be cured by additional allegations, the Court allows Cook leave to amend this claim.  The Court does not reach the question of whether a failure to act is sufficient for liability under the Bane Act.  *Compare Hernandez v. City of San Jose,* 241 F. Supp. 3d 959, 981 (N.D. Cal. 2017) (holding that a "failure to intervene does not constitute threats, intimidation, or coercion under the Bane Act"), *with Page v. County of Madera,* No. 17-0849 (DAD), 2017 WL 5998227, at *4 (E.D. Cal. Dec. 4, 2017) (holding that a failure to provide care can be sufficient under the Bane Act).

### 3.    Negligence

Under California law, "[a] plaintiff in any negligence suit must demonstrate 'a legal duty to use due care, a breach of such legal duty, and [that] the breach [is] the proximate or legal cause of the resulting injury."  *Kesner v. Superior Court*, 1 Cal. 5th 1132, 1142 (2016) (quoting *Beacon Residential Community Ass'n v. Skidmore, Owings & Merill LLP*, 59 Cal. 4th 568, 573 (2014)).

#### a.    Romley

Defendants argue that Cook has not stated a claim for negligence because he has failed to state sufficient facts showing that Romley breached any duty to Cook or that he was the actual or proximate cause of Cook's injuries.  Mot. at 14.

As discussed above, "police officers have a duty to intercede when their fellow officers violate the constitutional right of a suspect or other citizen."  *Koon,* 34 F.3d at 1447 n.25.  A police officer's duty to intercede can establish a legal duty for a negligence claim.  *Knapps v. City of Oakland*, 647 F. Supp. 2d 1129, 1164 (N.D. Cal. 2009).  Cook has failed to allege facts that Romley was under such a duty because he has not alleged that Romley witnessed the use of excessive force or was aware of the illegality of the search.  If Romley had no duty to intervene, then his failure to do so would not support a claim for negligence.  Accordingly, Cook's failure to

16

allege facts establishing a duty to intervene provides a separate basis, in addition to the statute of limitations, to dismiss his negligence claim against Romley. Because this defect also might be cured by additional allegations, the Court allows Cook leave to amend this claim.

### b. City of Fremont

Defendants further argue that Cook's negligence claim against the City of Fremont should be dismissed because Cook has failed to allege a statutory basis for public entity liability as required by California law. Mot. at 14–15. The Court finds this argument unpersuasive. Although California law does not generally permit a public entity to be held liable for its own negligence, *see* Cal. Gov't Code § 815, a public entity may be held vicariously liable for actions of its employees, within the scope of those employees' duties, if an employee's conduct would give rise to a cause of action against the employee himself or herself, *id.* § 815.2(a). Public employees are generally liable for their actions to the same extent as private persons. *Id.* § 820(a). To the extent that Cook states a claim for negligence against Fremont police officers acting within the scope of their employment—which Defendants do not challenge as to Tang—the City of Fremont is therefore also subject to liability.

The Court declines to dismiss the claim for failure to explicitly cite section 815.2. The Federal Rules of Civil Procedure "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted" so long as the complaint includes sufficient factual allegations to support a plausible claim. *Johnson v. City of Shelby*, 574 U.S. 10, 10–11 (2014) (per curiam) (reversing a decision that granted summary judgment for a defendant where the plaintiffs had failed to specifically cite 42 U.S.C. § 1983 in a claim for violation of constitutional rights). According, the Court finds no basis to dismiss the negligence claim against the City of Fremont on this ground.

### 4. Intentional Infliction of Emotional Distress

#### a. Romley

Defendants argue that Cook has not stated a claim for intentional infliction of emotional distress because the complaint "fails to show outrageous conduct . . . or any facts showing intentional or reckless disregard . . . of the probability of causing severe emotional distress" by

1    Romley.  Mot. at 15.  Under California law:

2               A cause of action for intentional infliction of emotional distress exists
             when there is "(1) extreme and outrageous conduct by the defendant
3            with the intention of causing, or reckless disregard of the probability
             of causing, emotional distress; (2) the plaintiff's suffering severe or
4            extreme emotional distress; and (3) actual and proximate causation of
             the emotional distress by the defendant's outrageous conduct." A
5            defendant's conduct is "outrageous" when it is so "extreme as to
             exceed all bounds of that usually tolerated in a civilized community."
6            And the defendant's conduct must be "intended to inflict injury or
             engaged in with the realization that injury will result."
7
             [. . .]
8
             With respect to the requirement that the plaintiff show severe
9            emotional distress, this court has set a high bar. "Severe emotional
             distress means emotional distress of such substantial quality or
10           enduring quality that no reasonable [person] in civilized society
             should be expected to endure it."
11

12   *Hughes v. Pair*, 46 Cal. 4th 1035, 1050–51 (2009) (quoting *Potter v. Firestone Tire & Rubber Co.*,

13   6 Cal. 4th 965, 1001 (1993)) (final alteration in original; internal citations omitted without

14   ellipses).

15          As set forth above, Cook fails to provide specific factual allegations of Romley's

16   participation in and awareness of the alleged excessive force or unconstitutional search.  He also

17   alleges no factual basis for the conclusion that Romley intended to cause Cook emotional distress.

18   Cook's assertions that Romley "intended to cause Cook emotional distress, or . . . acted with

19   reckless disregard of the probability that Cook would suffer such distress, knowing that Cook was

20   present when the conduct occurred," Compl. ¶ 51, are "mere conclusory statements" insufficient

21   to state a claim.  *See Iqbal,* 556 U.S. at 663.  Accordingly, Cook's failure to allege facts showing

22   Romley's liability establishes an additional basis, in addition to the statute of limitations, to

23   dismiss his intentional infliction of emotional distress claim against Romley.  Because this defect

24   also might be cured by additional allegations, the Court allows Cook leave to amend this claim.

25                           b.      City of Fremont

26          Defendants further argue, as they did in Cook's negligence claim, that Cook's intentional

27   infliction of emotional distress claim against the City of Fremont should be dismissed because

28   Cook has failed to allege a statutory basis for public entity liability.  Mot. at 16.  As stated above,

United States District Court
Northern District of California

to the extent that Cook states a claim for intentional infliction of emotional distress against Fremont police officers acting within the scope of their employment—which Defendants do not challenge as to Tang and the Doe Defendants—the City of Fremont is therefore also subject to liability.  The Court finds no basis to dismiss the intentional infliction of emotional distress claim on this ground.

## IV.    CONCLUSION

For the reasons discussed above, the following claims are DISMISSED with leave to amend: (1) Cook's claim for excessive force against Romley; (2) Cook's claim for unreasonable search against Tang and Romley; (3) Cook's *Monell* claim against the City of Fremont; (4) Cook's Bane Act claim against Defendants; (5) Cook's negligence claim against Defendants; and (6) Cook's intentional infliction of emotional distress claim against Defendants.  If Cook is aware of additional facts that he could allege to cure the defects identified above, he may file an amended complaint no later than December 6, 2020.  Any amended complaint must include the caption and civil case number used in this order (20-cv-02704) and the words FIRST AMENDED COMPLAINT on the first page.  Because an amended complaint completely replaces the previous complaint, any amended complaint may not incorporate claims or allegations of Cook's original complaint by reference, but instead must include all facts and claims Cook wishes to present and all of the defendants he wishes to sue.  *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992).

Cook, who is not represented by counsel, is encouraged to consult with the Federal Pro Bono Project's Legal Help Center Pro Se Help Desk for assistance as he continues to pursue this case.  Lawyers at the Help Desk can provide basic assistance to parties representing themselves but cannot provide legal representation.  In-person appointments are not currently available due to the COVID-19 public health emergency, but Cook may contact the Help Desk at (415) 782-8982 or FedPro@sfbar.org to schedule a telephonic appointment.

**IT IS SO ORDERED.**

Dated: October 28, 2020

JOSEPH C. SPERO
Chief Magistrate Judge

United States District Court
Northern District of California

19