UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TREVOR BRYANT COOK,<br><br>          Plaintiff,<br><br>     v.<br><br>CITY OF FREMONT, et al.,<br><br>          Defendants. | Case No. 20-cv-02704-JCS<br><br>**ORDER REGARDING MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Re: Dkt. No. 35 |

## I.   INTRODUCTION

Plaintiff Trevor Bryant Cook, pro se, brings this action against Defendants the City of Fremont, Fremont Police Officer Eric Tang, Fremont Police Officer Kurtis Michael Romley, Fremont Police Officer James Taylor, as well as ten Fremont police officers identified only as Does 1–10 (the "Doe Defendants"). Cook asserts claims based on a warrantless seizure of Cook and a warrantless search of Cook's home. The Court previously granted a motion to dismiss several claims in Cook's original complaint with leave to amend all dismissed claims. Cook filed an amended complaint reasserting the dismissed claims and adding Taylor as a defendant, and Defendants move once again to dismiss some of Cook's claims. A hearing was held on February 26, 2021 at 9:30 a.m. For the reasons discussed below, Defendants' motion is GRANTED.[1]

## II.   BACKGROUND

### A.   Previous Order

Cook's original complaint included the following claims: (1) unreasonable seizure of Cook's person in violation of the Fourth Amendment and 42 U.S.C. § 1983, against only Tang, Romley, and the Doe Defendants; (2) unreasonable search in violation of the Fourth Amendment

---

[1] The parties have consented to the jurisdiction of the undersigned magistrate judge for all purposes pursuant to 28 U.S.C. § 636(c).

1  and 42 U.S.C. § 1983, against only Tang, Romley and the Doe Defendants; (3) unreasonable
2  search and seizure in violation of the Fourth Amendment and 42 U.S.C. § 1983, against only the
3  City of Fremont; (4) interference with Cook's civil rights by threats, intimidation, or coercion in
4  violation of California Civil Code section 52.1; (5) negligence; and (6) intentional infliction of
5  emotional distress.

6  The Court granted Defendants' motion to dismiss Cook's excessive force claim against
7  Romley because Cook failed to allege that Romley was an integral participant in Tang's use of
8  excessive or that Romley was near enough to have a realistic opportunity to intervene. Order Re
9  Mot. to Dismiss ("MTD Order," dkt. 21)[2] at 8–9. The Court dismissed Cook's unreasonable
10 search claim against Romley and Tang because Cook had failed to allege that the officers were
11 aware of the illegality of the search and therefore had a duty to intervene. *Id.* at 9–10. The Court
12 dismissed Cook's *Monell* claim against the City of Fremont because he failed to allege facts
13 supporting allegations of unconstitutional practice or customs, ratification by officials with policy-
14 making authority, or inadequate training. *Id.* at 10–13. Finally, the Court dismissed Cook's state
15 law claims for failure to allege compliance with California's government claims procedure,
16 including whether a tolling provision applied. *Id.* at 13–15. The Court granted Cook leave to
17 amend all of his dismissed claims.

### B. Allegations of the First Amended Complaint

The allegations of Cook's first amended complaint are similar to his original complaint, with additions intended to address the concerns of the Court's previous order. Because the factual allegations of a complaint are generally taken as true at the pleading stage, this section recites the allegations of Cook's first amended complaint as if true. Nothing in this order should be taken as resolving any issue of fact that might be disputed at a later stage of the case.

On April 19, 2018, Cook was watching television with his wife in the garage of their home in Fremont, California. 1st Am. Compl. ("FAC," dkt. 34) ¶ 15. His teenage son was also inside

---

[2] *Cook v. City of Fremont*, No. 20-cv-02704-JCS, 2020 WL 6318712 (N.D. Cal. Oct. 28, 2020). Citations herein to the Court's previous order refer to page numbers of the version filed in the Court's ECF docket.

the home. *Id.* ¶ 20.  While Cook and his wife were watching television, a couple whom Cook did not initially recognize called out to him. *Id.* ¶ 16.  Cook realized that one of the individuals was a childhood acquaintance named "Mike." *Id.*  Cook spoke to Mike for a brief moment before returning to watch television with his wife. *Id.* ¶ 16–17.  Shortly after, several police officers came onto Cook's property and approached Cook and his wife. *Id.* ¶ 18.  Taylor, a K-9 officer, approached Cook and his wife with his gun drawn and "aimed directly at them with his finger on the trigger." *Id.*  Taylor also held the leash of a lunging dog while shouting, "'Get your hands up or you['re] going to get shot!'" *Id.*

       Another officer ordered Cook to walk to the end of the driveway. *Id.*  When Cook asked, "what was going on," one or more officers responded that they would shoot Cook and his wife if he did not comply. *Id.*  With their weapons trained on Cook and his wife, Tang and Taylor began walking up the driveway towards the garage. *Id.* ¶ 19.  Cook held up his hands and complied with the officers' orders with "the hope that he could prevent them from getting near his wife and his teenage son who was inside the home." *Id.* ¶ 20.  Although Cook made no threatening gestures and kept his hands raised, Tang "grabbed Cook's arm, did a leg sweep, and slammed him to the ground . . . causing Cook's knees, shoulders, and face to hit the ground with great force." *Id.*  Tang then handcuffed Cook behind his back while Cook was on the ground. *Id.* ¶¶ 21–22.  While Tang was handcuffing Cook, Romley parked his vehicle across the street and walked up the driveway past Tang and Cook. *Id.* ¶ 22.  Romley, an undercover officer, had been following Mike because the police believed Mike had stolen a vehicle. *Id.* ¶¶ 22, 29.

       While Cook was on the ground, he called for his wife to begin filming the interaction. *Id.* ¶ 23.  His wife was "frozen in fear" but attempted to record the interaction on a camcorder. *Id.*  Taylor and the K-9 dog quickly approached his wife. *Id.*  The dog almost bit her before Taylor pulled the dog away. *Id.*  Cook's wife then grabbed her phone and began recording. *Id.*  Tang lifted Cook to his feet and walked Cook away from his wife's camera towards the street where multiple police vehicles were parked and hidden from view. *Id.* ¶ 24.  Cook's wife attempted to follow Tang and Cook to continue filming when Taylor blocked her path and ordered her to return to the garage. *Id.*  She was roughly fifty feet away from Tang and Cook and "could not possibly

3

have interfered with police operations." *Id.*  Cook then loudly yelled the following for all the officers to easily hear: "No Officers are allowed in my home, they do not have a warrant, and do not have permission." *Id.* (quotation marks omitted).

While Cook was handcuffed behind his back, Tang began to beat Cook in "full view of several parked police cars and in full view of the sidewalk where Romley was standing." *Id.* ¶ 25. Tang "pounded on Cook's body with open palms all over his body, including striking Cook directly in his testicles." *Id.*  Romley watched Tang beat Cook before walking to the garage. *Id.* Tang then placed Cook in the back seat of a police vehicle for "almost two hours with the air conditioning set extremely cold . . . and the windows rolled up." *Id.* ¶ 28.

Tang and Romley explained to Cook's wife that they were searching for Mike, who had stolen a car. *Id.* ¶ 29.  Tang explained that they did not believe Mike was violent, but that "he liked to steal things." *Id.*  The officers did not say they believed Cook was involved in the theft. *Id.*  The officers attempted to coerce Cook's visibly terrified wife into "saying something untrue." *Id.* ¶ 30.  Tang told Cook's wife that they were considering whether or not to arrest Cook. *Id.* ¶ 31.

With Tang's approval, Romley, Taylor, and the Doe Defendants searched Cook's home and back yard without a warrant and without consent. *Id.* ¶ 32.  Tang, Romley, Taylor, and the Doe Defendants "either participated or were close by, and watching." *Id.* ¶ 33.  They were "integral participants" and did not intervene or attempt to intervene in the search. *Id.*  A Doe Defendant then transported Cook to the Fremont Jail where Cook was detained for an additional two hours. *Id.* ¶ 34.  During the drive, Cook was handcuffed behind his back and was not secured with a safety belt. *Id.* ¶ 35.  At the Fremont Jail, Cook was searched and the Doe Defendant "spread Cook's butt cheeks." *Id.* ¶ 36.  When Cook confronted the Doe Defendant, the Doe Defendant "threatened to throw him into Santa Rita." *Id.*

After the incident, Cook filed a claim pursuant to California Government Code section 910. *Id.* ¶ 38.  He "mailed his notice of claim to the City of Fremont on October 11, 2018, and the City mailed its rejection of the claim on October 18, 2018." *Id.*  Cook retained a criminal defense attorney to represent him in Fremont Superior Court. *Id.* ¶ 37.  On September 5, 2019, Cook's

attorney notified him that there was no indication that charges would be filed and that his attorney would "stop checking with the District Attorney." *Id.* On November 20, 2020, Cook's wife called the District Attorney's Office and was informed that the investigation was "still pending." *Id.*

Cook's complaint includes the following claims: (1) excessive force in violation of the Fourth Amendment and 42 U.S.C. § 1983, against only Tang, Romley, Taylor, and the Doe Defendants, *id.* ¶¶ 39–41; (2) unreasonable search in violation of the Fourth Amendment and 42 U.S.C. § 1983, against only Tang, Romley, Taylor, and the Doe Defendants, *id.* ¶¶ 42–45; (3) unlawful detention and arrest in violation of the Fourth Amendment and 42 U.S.C. § 1983, against only Tang, Romley, Taylor, and the Doe Defendants, *id.* ¶¶ 46–47; (4) unreasonable seizure in violation of the Fourth Amendment and 42 U.S.C. § 1983, against only the City of Fremont, *id.* ¶¶ 48–49; (5) interference with Cook's civil rights by threats, intimidation, or coercion in violation of California Civil Code section 52.1, *id.* ¶¶ 50–55; (6) negligence, *id.* ¶¶ 56–58; and (7) intentional infliction of emotional distress, *id.* ¶¶ 59–63.

### C. Parties' Arguments

Defendants contend that Cook's unreasonable search and seizure claim against the City of Fremont should be dismissed for failure to meet the requirements of *Monell v. Department of Social Services*, 436 U.S. 658 (1978). Mot. (dkt. 35) at 5–11. Defendants contend that all state law claims should be dismissed because the claims are "time-barred by the Government Claims Act six-month complaint filing deadline" and Cook has not alleged any facts indicating that any tolling provision applies, including California Government Code section 945.3. *Id.* at 11–14. Specifically, Defendants argue the statute of limitations does not toll while criminal investigations "might be pending." *Id.* at 13 (citing Cal. Gov't Code § 945.3). Defendants argue that the claim for violation of California Civil Code section 52.1 should be dismissed as to Romley because Cook has not alleged sufficient facts showing that Romley "used violence or threatened to use violence" against Cook. *Id.* at 14–15. Lastly, Defendants argue the claims should be dismissed without leave to amend. *Id.* at 15.

In his opposition, Cook argues that his allegations are sufficient and that the uncontested

claims should be permitted to proceed. *See generally* Opp'n (dkt. 38). For the *Monell* claim, Cook argues that a ratification theory is supported because "[b]oth sergeants were in positions of authority" and therefore implicitly ratified their own behavior and the behavior of the other officers. *Id.* at 4. Cook argues that an inadequate training theory is supported because "[n]ot one of these officers did the right thing, which suggests these officers were inadequately or improperly trained." *Id.* Cook argues that a city custom or practice theory is supported because the officers were "clearly operating in [a] faulty and problematic orchestrated way," which demonstrates that "this type of unruly behavior has become a custom within the police department." *Id.* Cook argues his state law claims should not be time-barred because it is "within the court['s] discretion" and "in the interest of justice" to apply the tolling provision of section 945.3. *Id.* For the California Civil Code section 52.1. claim, Cook argues that he observed Romley aggressively approaching his wife, and therefore it was "fully reasonable at that time for [Cook] to believe they [we]re going to treat her just as they treated [him]." *Id.* at 5.

In their reply, Defendants reiterate most of the arguments previously made in their motion. *See generally* Reply (dkt. 38).

### III.   ANALYSIS

#### A.   Legal Standard Under 12(b)(6)

A complaint may be dismissed for failure to start a claim under which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure. "The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint." *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). Generally, a claimant's burden at the pleading stage is relatively light. Rule 8(a) of the Federal Rules of Civil Procedure states that a "pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).

In ruling on a motion to dismiss under Rule 12(b)(6), the court takes "all allegations of material fact as true and construe[s] them in the light most favorable to the non-moving party." *Parks Sch. of Bus. V. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Dismissal may be based on a lack of a cognizable legal theory or on the absence of facts that would support a valid theory.

*Balisteri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A pleading must "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action that will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "[C]ourts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 557). Rather, the claim must be "'plausible on its face,'" meaning that the claimant must plead sufficient factual allegations to "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 570).

Pro se pleadings are generally liberally construed and held to a less stringent standard. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Even post-*Iqbal*, courts must still liberally construe pro se filings. *Hebbe v. Pliler*, 627 F.3d 338 (9th Cir. 2010). As the Ninth Circuit explained in *Hebbe*, "while the standard is higher, our obligation remains, where the petitioner is pro se, particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt." *Id.* at 342. Nevertheless, the court may not "supply essential elements of the claim that were not initially pled." *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

If the Court dismisses a complaint under Rule 12(b)(6), it should "grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks and citations omitted). In general, courts "should freely give leave when justice so requires." *Id.* Further, when it dismisses the complaint of a pro se litigant with leave to amend, "'the district court must provide the litigant with notice of the deficiencies in his complaint in order to ensure that the litigant uses the opportunity to amend effectively.'" *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) (quoting *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992)). "'Without the benefit of a statement of deficiencies, the pro

7

litigant will likely repeat previous errors.'" *Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 624 (9th Cir. 1988) (quoting *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987)).

### B. *Monell* Claim

Under *Monell*, a municipality cannot be held liable under § 1983 for constitutional injuries inflicted by its employees on a theory of respondeat superior. *Monell*, 436 U.S. at 691. "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694. A plaintiff seeking to establish municipal liability under § 1983 may do so in one of three ways: (1) the plaintiff may demonstrate that a municipal employee committed the alleged constitutional violation "pursuant to a formal government policy or longstanding practice or custom which constitutes the standard operating procedures of the local governmental entity"; (2) the plaintiff may demonstrate that the individual who committed the constitutional violation was an official with "final policy-making authority and that the challenged action itself thus constituted an act of official government policy"; or (3) the plaintiff may demonstrate that "an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it." *Gillette v. Delmore*, 979 F.2d 1342, 1346 (9th Cir. 1992).

#### 1. Ratification

The Supreme Court has held that "municipal liability under § 1983 attaches where . . . a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986). Thus, "[i]f the authorized policymakers approve a subordinate's decision and the basis for it, their ratification [is] chargeable to the municipality." *Prapotnik*, 485 U.S. at 127.

Cook recycles the same allegations from his original complaint and again alleges that the unconstitutional actions of Tang, Romley, Taylor, and the Doe Defendants were "allowed, directed, encouraged and/or ratified by policy making officials for the City of Fremont." FAC ¶ 48. In his opposition, Cook argues that "[b]oth sergeants were in positions of authority" and

therefore "implicitly ratified" their own behavior and the behavior of the other officers. Opp'n at 4. Cook does not, however, allege any specific facts that the sergeants had "final policymaking authority" as would be required to hold the City of Fremont liable on a theory of ratification, or that any more senior policymaking official ratified their conduct. *See Barone v. City of Springfield, Oregon*, 902 F.3d 1091, 1107 (9th Cir. 2018) (internal quotation marks and citations omitted).

Accordingly, Cook's § 1983 claim against the City of Fremont is dismissed without leave to amend to the extent it is based on a theory of ratification.

### 2. Failure to Train

"In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). However, "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Id.* Thus, a municipality may be held liable based on a failure to train only where it "amount[s] to 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.'" *Id.* (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). The Supreme Court has explained that this high threshold for establishing municipal liability is consistent with its holding in *Monell* because "permitting cases against cities for their 'failure to train' employees to go forward under § 1983 on a lesser standard for fault would result in de facto respondeat superior liability on municipalities" and would "engage the federal courts in an endless exercise of second-guessing municipal employee-training programs." *City of Canton*, 489 U.S. at 392.

In *City of Canton*, the Court addressed the circumstances under which a municipality can be held liable under § 1983 based on inadequate training:

> In resolving the issue of a city's liability, the focus must be on adequacy of the training program in relation to the tasks the particular officers must perform. That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program. *See Springfield v. Kibbe*, 480 U.S. [257, 268 (1987)] (O'CONNOR, J., dissenting); *Oklahoma City*

9

> *v. Tuttle*, 471 U.S. [808, 821 (1985)] (opinion of REHNQUIST, J.). If may be, for example, that an otherwise sound program has occasionally been negligently administered. Neither will it suffice to prove that an injury or accident could have been avoided if an officer had had better or more training, sufficient to equipped him to avoid the particular injury-causing conduct. Such a claim could be made about almost any encounter resulting in injury, yet not condemn the adequacy of the program to enable officers to respond properly to the usual and recurring situations with which they must deal. And plainly, adequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the city liable.

*Id.* at 390–91.

Cook again alleges that the City of Fremont "[f]ail[ed] to institute, maintain, or administer sufficient training on subjects such as seizures/use of force against citizens and warrantless searches of persons and homes." FAC ¶ 38(a).  As the Court instructed Cook in its previous order, Cook has not alleged specific facts as to the nature of the deficient training or how the allegedly unconstitutional conduct of the other defendants resulted from the training.  Cook also fails to allege a pattern of similar constitutional violations. *See Connick*, 563 U.S. at 62 ("Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights."). Cook instead argues that a lack of training can be inferred from the fact that all officers in the instant case engaged in unconstitutional conduct. *See* Opp'n at 4.  However, these events occurred within the span of several hours and cannot establish a pattern of similar unconstitutional behavior. *See Connick*, 563 U.S. at 63 n.7 ("[C]ontemporaneous or subsequent conduct cannot establish a pattern of violations that would provide notice to the [municipality] and the opportunity to conform to constitutional dictates." (internal quotation marks omitted)); *see also City of Canton*, 489 U.S. at 391 (acknowledging that the fact of alleged violations alone "says little about the training program or the legal basis for holding the city liable").

Accordingly, Cook's § 1983 claim against the City of Fremont is dismissed without leave to amend to the extent it is based on inadequate training.

### 3. Custom or Practice

Under § 1983, a municipality may be held liable based on an unconstitutional policy even where it is not an express municipal policy that has been formally adopted.  In particular, the

Supreme Court has recognized that a municipality may be held liable on the basis of an unconstitutional policy if the plaintiff can "prove the existence of a widespread practice that, although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a "custom or usage" with the force of law.'" *City of St. Louis v. Prapotnik,* 485 U.S. 112, 127 (1988) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167–68 (1970)). "Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996). In order to withstand a motion to dismiss for failure to state a claim, a *Monell* claim must consist of more than mere "formulaic recitations of the existence of unlawful policies, conducts or habits." *Warner v. County of San Diego,* No. 10-1057, 2011 WL 662993, at *4 (S.D. Cal. Feb. 14, 2011).

Cook again alleges that the City of Fremont "[f]ail[ed] to have or enforce appropriate policies, procedures, and training to prevent, stop, or correct unconstitutional conduct, customs, and procedures when the need to do so was obvious." FAC ¶ 48(c). Cook applies the same logic as his previous arguments and contends that the officers' unconstitutional behavior is sufficient to demonstrate "this type of unruly behavior has become custom within the police department." Opp'n at 4. Although Cook alleges facts regarding his own experiences, he fails to identify a specific custom or practice beyond vague and conclusory allegations. *See Cangress v. City of Los Angeles*, No. 2:14-cv-01743-SVW-MANx, 2014 WL 12567175, at *1 (C.D. Cal. Oct. 22, 2014) (dismissing *Monell* claim where parties made only vague references to "First Amendment policies" and did not identify a specific custom or policy).

Accordingly, Cook's § 1983 claim against the City of Fremont is dismissed without leave to amend to the extent it is based on an alleged unconstitutional practice or custom.

### C. Statute of Limitations as to State Law Claims

California law generally requires that before a plaintiff can sue a public entity or public employee for money damages, the plaintiff must first present a claim to the public entity. *See, e.g., Willis v. Reddin*, 418 F.2d 702, 704 (9th Cir. 1969); *Briggs v. Lawrence*, 230 Cal. App. 3d

11

605, 613 (1991); Cal. Gov't Code §§ 950.2, 950.6.  Compliance with this requirement must be alleged in the plaintiff's complaint.  *State v. Superior Court (Bodde)*, 32 Cal. 4th 1234, 1243 (2004); *Mangold v. Cal. Pub. Utils. Comm'n*, 67 F.3d 1470, 1477 (9th Cir. 1995).  The entity must grant or deny a claim within forty-five days or it is deemed rejected.  *See* Cal. Gov't Code § 912.4.  If the entity provides written notice of a decision, the statute of limitations for the plaintiff to bring a civil action expires "six months after the date of such notice is personally delivered or deposited in the mail."  Cal. Gov't Code § 945.6(a)(1).  Here, Cook asserts state torts for negligence, intentional infliction of emotional distress, and a violation of California Civil Code section 52.1.  Each of these claims are subject to the six-month statute of limitations running from the mailing of the written denial.  *See Okoro v. City of Oakland*, 142 Cal. App. 4th 306, 311 (2006) (applying the six-month limitations period provided by section 945.6(a)(1) to suits against public entities and public employees acting in the scope of their employment).  Cook alleges that the rejection notice was mailed on October 18, 2018.  FAC ¶ 31.  Cook did not file his claim until April 17, 2020, outside the six-month limitation period.

Cook argues that the statute of limitations tolled until his counsel advised him that it appeared the District Attorney would not file charges.  The Court disagrees.  Pursuant to California Government Code section 945.3, the statute of limitations on any civil action against a police officer or public entity employing the police officer relating to an offense for which the plaintiff faces criminal charges is tolled during the period that charges are pending before a superior court.  Cal. Gov't Code § 945.3.  Under this section, criminal charges are not "pending" until a criminal complaint is filed.  *Torres v. City of Santa Ana*, 108 F.3d 224, 227 (9th Cir. 1997).  Because Cook concedes that no criminal charges were ever filed against him, *see* FAC ¶ 37, the tolling provision of section 945.3 does not apply.  Cook has not asserted any other basis for tolling the statute of limitations.

The Court therefore GRANTS Defendants' motion to dismiss Cook's state law claims as time-barred.  Because there is no indication that Cook could allege facts supporting tolling the statute of limitations, the Court denies further leave to amend.

## IV. CONCLUSION

For the reasons discussed above, the following claims are DISMISSED: (1) the *Monell* claim against the City of Fremont, with prejudice; (2) the Bane Act claim against all Defendants, with prejudice; (3) the negligence claim against all Defendants, with prejudice; and (4) the intentional infliction of emotional distress claim against all Defendants, with prejudice. Defendants did not move to dismiss the following claims, which may proceed: (1) the § 1983 excessive force claim against Tang, Romley, Taylor, and the Doe Defendants; (2) the § 1983 unreasonable search claim against Tang, Romley, Taylor, and the Doe Defendants; and (3) the § 1983 unlawful detention and arrest claim against Tang, Romley, Taylor, and the Doe Defendants.

Cook, who is not represented by counsel, is encouraged to consult with the Federal Pro Bono Project's Legal Help Center Pro Se Help Desk for assistance as he continues to pursue this case. Lawyers at the Help Desk can provide basic assistance to parties representing themselves but cannot provide legal representation. In-person appointments are not currently available due to COVID-19 public health emergency, but Cook may contact the Help Desk at (415) 782-8982 or FedPro@sfbar.org to schedule a telephonic appointment.

**IT IS SO ORDERED.**

Dated: February 26, 2021

_____
JOSEPH C. SPERO
Chief Magistrate Judge